**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
AFRICAN COMMUNITIES TOGETHER;           )
MARY DOE; DAVID DOE; PETER DOE;         )
and JACOB DOE, on behalf of             )
themselves and all others              )
similarly situated,                     )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )        Civil Action
                                        )        No. 25-cv-13939-PBS
KRISTI NOEM, in her official            )
capacity as Secretary of the            )
Department of Homeland Security;        )
U.S. DEPARTMENT OF HOMELAND             )
SECURITY; U.S. CITIZENSHIP AND          )
IMMIGRATION SERVICES; and UNITED        )
STATES OF AMERICA,                      )
                                        )
                    Defendants.         )
_____ )

**ORDER**

April 9, 2026

Saris, J.

Defendants have appealed this Court's order postponing the termination of South Sudan's Temporary Protected Status ("TPS") designation. See Afr. Cmtys. Together v. Noem, __ F. Supp. 3d __ (D. Mass. 2026) [2026 WL 395732], appeal filed, No. 26-1254 (1st Cir. Mar. 13, 2026). Now before the Court is Defendants' motion for a stay pending appeal. The Supreme Court has recently deferred resolving applications for stays in similar cases. See Noem v. Doe, __ S. Ct. __, __ (2026) [2026 WL 731088, at *1]. Lacking

1

further guidance from the Supreme Court, this Court denies Defendants' motion.

In considering Defendants' request for a stay, the Court assesses four factors: (1) whether Defendants "ha[ve] made 'a strong showing that [they are] likely to succeed on the merits' of [their] appeal"; (2) whether Defendants "ha[ve] shown that [they] 'will be irreparably injured absent a stay'"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." New York v. Kennedy, 155 F.4th 67, 72 (1st Cir. 2025) (quoting Nken v. Holder, 556 U.S. 418, 426 (2009)). Defendants "bear[] the burden of justifying the extraordinary relief" of a stay pending appeal. Id.

Defendants repeat the arguments they already raised in opposing Plaintiffs' motion for postponement. In particular, Defendants contend that they are likely to succeed on the merits of their arguments that 8 U.S.C. § 1254a(b)(5)(A) bars judicial review; that 8 U.S.C. § 1252(f)(1) deprives the Court of authority to postpone a TPS termination; that former Secretary Noem published the true basis for her termination determination in the Federal Register and did not act pretextually; and that former Secretary Noem consulted with appropriate agencies. Defendants further assert that the equities warrant a stay and that 5 U.S.C. § 705 does not authorize universal relief. The Court rejected all of

2

these arguments in its opinion postponing the termination of South Sudan's TPS designation, see Afr. Cmtys. Together, __ F. Supp. 3d at __ [2026 WL 395732, at *5-14], and does so again here for the same reasons.

One point newly raised by Defendants merits brief attention. In the Court's opinion granting Plaintiffs' motion to postpone, the Court noted that when U.S. Citizenship and Immigration Services ("USCIS") "searched for records of fraud or public safety concerns among 228 South Sudanese TPS holders" in its Fraud Detection and National Security ("FDNS") database, "it found none." Id. at __ [2026 WL 395732, at *10] (citing Dkt. 59-1 at 129). Defendants concede the accuracy of this statement but highlight, for the first time in this litigation, that when the U.S. Department of Homeland Security ("DHS") searched a different database called "TECS," that database "reveal[ed] that approximately 28% of South Sudan[ese] TPS beneficiaries or applicants have at least one TECS hit in their immigration benefit request history." Dkt. 70 at 11 (quoting Dkt. 59-1 at 138). Defendants contend that these TECS hits provide support for former Secretary Noem's statement in the Federal Register that South Sudanese TPS holders have "been subjects of administrative investigation for fraud, public safety[,] and national security concerns." Termination of the Designation of South Sudan for Temporary Protected Status, 90 Fed. Reg. 50484, 50486 (Nov. 6, 2025).

The TECS database "is the principal system used by officers at the border to assist with screening and determinations regarding admissibility of arriving persons." U.S. Dep't of Homeland Sec., TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative 2 (2011), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-sar-update_0.pdf; see Melino v. Bos. Med. Ctr., 127 F.4th 391, 394 n.1 (1st Cir. 2025) (taking judicial notice of the contents of government websites). Defendants are correct that "TECS is an information-sharing platform" that can be used, among other things, "to identify individuals who pose a risk to national security or public safety[] and individuals attempting to obtain immigration benefits through fraud or misrepresentation." Dkt. 59-1 at 138. But TECS also incorporates various other data, including Border Patrol agents' "observation[s] relating to an encounter with a traveler" or other "memorable event[s]." TECS System, supra, at 2. Due to the breadth of the TECS platform, "a TECS hit does not always lead to derogatory findings or a negative adjudicative outcome" with respect to fraud, public safety, or national security. Dkt. 59-1 at 138.

On the other hand, USCIS's FDNS Directorate conducts administrative investigations specifically into "suspected or confirmed fraud, criminal activity, public safety[,] and/or national security concerns." U.S. Dep't of Homeland Sec., Fraud

Detection and National Security Directorate 9 (2014), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis013-01fdnsprogram-appendixgupdate-march2020.pdf. In doing so, it consults various databases, including (but not limited to) TECS. See id. at 10. Therefore, the administrative record likely reflects that none of the South Sudanese TECS hits were found to be associated with fraud or public safety concerns when investigated by USCIS in the FDNS data. See Dkt. 59-1 at 129.

Indeed, Defendants do not assert that any such concerns were identified. Rather, they merely argue that South Sudanese TPS holders and applicants were "subject to administrative investigation[]," as noted in the Federal Register. Dkt. 70 at 11 (quoting Dkt. 59-1 at 138). To the extent this administrative investigation consisted of USCIS querying FDNS data, Defendants are plainly correct that such an "investigation" occurred, and the Court's opinion is in accord. See Afr. Cmtys. Together, __ F. Supp. 3d at __ [2026 WL 395732, at *10] ("[W]hen USCIS searched for records of fraud or public safety concerns . . . it found none." (emphasis added)). The fact remains that no evidence of actual fraud or public safety concerns was uncovered, at least according to the administrative record. Given that the purported "investigation" apparently revealed no such concerns, former Secretary Noem's reference to the investigation in support of

terminating the TPS designation is, in the Court's view, evidence of pretext.

For the foregoing reasons, Defendants' motion for a stay pending appeal (Dkt. 69) is **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

6