UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER, et al, <br><br> Plaintiffs, <br><br> v. <br><br> MARKWAYNE MULLIN, *Secretary of the U.S. Department of Homeland Security, in his official capacity*, et al,[1] <br><br> Defendants. | Case No. 25-cv-13939-PBS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

## I.     INTRODUCTION

Plaintiffs seek leave to amend their complaint by adding two claims that they characterize as "fundamentally new challenges" to the termination of South Sudan's TPS designation. Doc. No. 95 at 8. Those claims, however, clearly cannot succeed for several different reasons. Among other things, far from being "fundamentally new," their proposed procedural due process claim is *fundamentally the same* as the process-based claims that they previously asserted and that the Supreme Court has now deemed categorically unreviewable. Moreover, their proposed excess-of-authority claim is a non-constitutional claim that is squarely foreclosed by Supreme Court precedent. And if that were not enough, the claim contends that the termination of South Sudan's TPS designation was invalid because only the Attorney General—not the Secretary of Homeland Security—has authority over TPS determinations. But even if that were true, it would mean that

---

[1] Secretary of Homeland Security Markwayne Mullin has been automatically substituted for former Secretary Kristi Noem. Fed. R. Civ. P. 25(d).

South Sudan was never lawfully *designated* for TPS in the first instance, stripping Plaintiffs of the protections they seek to preserve. Accordingly, and for the reasons explained below, the Court should deny leave to amend.

## II. STANDARD

Rule 15 provides that "[t]he court should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Still, "the grant or denial of an opportunity to amend is within the discretion of the District Court," which may deny leave based on reasons such as the "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) ("The default rule mandates that leave to amend is to be 'freely given when justice so requires,' unless the amendment 'would be futile, or reward, *inter alia,* undue or intended delay.'" (citations omitted)). In this context, "futility" means that the proposed amendments "would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Likewise, a proposed amendment is futile if it would be subject to dismissal for "lack of subject-matter jurisdiction." *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 6 n.3 (1st Cir. 2016).

## III. ARGUMENT

### A. Plaintiffs' proposed procedural due process claim is futile.

Plaintiffs first seek to add a claim that the termination of South Sudan's TPS designation violated their procedural due process rights. *See* Doc. No. 94-1 at 71-75. They allege that they have protected liberty and property interests "in obtaining and maintaining TPS status and in the attendant benefits that come with that status," and that the termination determination deprived them of those interests without due process of law because, in their view, it was made without following the requisite procedural steps "in the TPS statute." *Id.* at 70, 73. The TPS statute directs

2

the Secretary to "consult[] with appropriate agencies" before determining whether to terminate a TPS designation.  8 U.S.C. § 1254a(b)(3)(A).  But Plaintiffs claim that "the Secretary did not meaningfully consult with appropriate federal agencies."  Doc. No. 94-1 at 74.  Moreover, the TPS statute directs the Secretary to "review the conditions in the foreign state" at issue, and if the Secretary determines that the country's TPS designation is no longer justified, to publish "the basis for the determination" in the Federal Register.  8 U.S.C. § 1254a(b)(3)(A), (B).  Plaintiffs argue, however, that the Secretary did not follow these statutory requirements because her "decision-making was predetermined, pretextual, and procedurally deficient."  Doc. No. 94-1 at 74.

Granting Plaintiffs leave to assert this claim would be futile for at least five independently sufficient reasons.

*First*, this claim seeks to challenge the Secretary's "[t]ermination of South Sudan's TPS designation."  Doc. No. 94-1 at 69.  The TPS statute clearly states, however, that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state."  8 U.S.C. § 1254a(b)(5)(A).  Plaintiffs' proposed claim seeks "precisely what Congress [has] barred" and "falls within the plain text of § 1254a(b)(5)(A)'s judicial-review bar," which "does not distinguish statutory and constitutional claims."  *Mullin v. Doe*, 146 S. Ct. 2121, 2140 (2026) (Thomas, J., concurring).

*Second*, and just as fundamentally, § 1254a(b)(5)(A) bars review of this claim because it is the *same* type of claim that the Supreme Court already deemed unreviewable.  The plaintiffs in *Doe*—like Plaintiffs here—sought to challenge a TPS termination "based on alleged procedural errors," including that the Secretary did not adequately consult with appropriate federal agencies.  *Doe*, 146 S. Ct. at 2134.  The plaintiffs in *Doe*—like Plaintiffs here—similarly claimed that the Secretary procedurally erred by making a "preordained decision" to terminate a TPS designation.

3

*Id.* at 2139.  The Supreme Court, however, held that the judicial-review bar applied to claims based on alleged procedural and substantive violations alike.  *Id.* at 2134–2137.  And, in so doing, it took care to emphasize the "importan[ce]" of "ensur[ing] that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering."  *Id.* at 2136.

Plaintiffs have flouted that important principle by admittedly seeking to challenge the *same* alleged procedural violations under a constitutional label.  *See* Doc. No. 95 at 10 ("Plaintiffs' new claims are based on the same factual allegations in the initial Complaint[.]").  The Court should look beyond the mere label and recognize this claim for what it clearly is: a challenge based on the Secretary's purported failure to adhere to *statutory* requirements.  *See Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (Breyer, J.) ("In examining a complaint we are bound to look beyond the literal meaning of the language used to ascertain the real cause of the complaint.").  "Any other result would elevate form over substance and allow parties to evade" the TPS judicial-review bar "by relabeling their" statutory claims as constitutional ones.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

It would be extraordinary if Plaintiffs could—like the flip of a switch—so easily and completely sidestep § 1254a(b)(5)(A) by restyling the same *previously unreviewable* procedural disputes as constitutional ones.  Under Plaintiffs' theory, the Secretary's alleged failure to meaningfully consult with appropriate agencies was unreviewable before—but has become reviewable now—merely because they have called this alleged statutory violation a constitutional one.  If that were how things worked, what is the significance of the Supreme Court's conclusion that the judicial review bar applies to claims based on alleged procedural errors?  *All of the claims* that *Doe* took off the table could be reasserted as procedural due process claims.  Indeed, that is precisely what Plaintiffs' proposed amendments seek to accomplish.  *See* Doc. No. 94-1 at 74

4

(seeking to vacate the termination because "the Secretary did not meaningfully consult with appropriate federal agencies"); *id.* (seeking to vacate the termination because "the Secretary's decision-making was predetermined, pretextual, and procedurally deficient").  The Court "should not lightly conclude that Congress enacted a self-defeating statute" that can be avoided with the simple expedient of a change of labels.  *Borden v. United States*, 593 U.S. 420, 460 (2021) (quotations omitted); *see Abbott v. Perez*, 585 U.S. 579, 594-95 (2018) (cautioning against an over-emphasis on "labels" that could permit "manipulation" of courts' jurisdiction).

*Third*, to assert a procedural due process claim, Plaintiffs must "first" show that "there exists a liberty or property interest" to which they have "a legitimate claim of entitlement." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.").  Where a statute creates a benefit, the plaintiff must "have more than a unilateral expectation of it." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).  Accordingly, a statute may give rise to a legitimate claim of entitlement only where it places "substantive limitations" on the government's exercise of discretion, *Wakinekona*, 461 U.S. at 249, and "mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met," *Thompson*, 490 U.S. at 462.

Plaintiffs have no legitimate claim of entitlement to South Sudan's TPS designation being extended.  The *Temporary* Protected Status statute provides in relevant part that—in deciding whether to extend or terminate a designation—the Secretary "shall determine whether the conditions for such designation under this subsection continue to be met."  8 U.S.C.

5

§ 1254a(b)(3)(A).  It does not, however, impose any "substantive limitations" on the Secretary in determining whether these conditions continue to be met.  *Wakinekona*, 461 U.S. at 249.  And while the statute mandates *termination* in specified circumstances, it does not mandate *extending* a country's TPS designation upon a finding that certain criteria have been met.  In other words, it does not channel agency discretion by providing that, if certain "substantive predicates are present, a particular outcome must follow."  *Thompson*, 490 U.S. at 463 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).  Moreover, the decision whether to grant TPS to any particular individual is also discretionary.  *See* 8 U.S.C. § 1254a(a)(1)(A) (providing that the Secretary "may grant" TPS to a qualifying national of a designated country); 8 C.F.R. § 244.2 ("an alien may in the discretion of the director be granted [TPS] if the alien establishes that he or she" meets the eligibility criteria); *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023) (TPS is a "discretionary form of relief"); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008) (same); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018) ("the explicitly temporary nature of the [TPS] program suggests" that holders cannot establish "reliance interests").

To be sure, Plaintiffs contend that the TPS statute imposes certain *procedural* requirements before the Secretary may determine whether to extend a designation.  But they have repeatedly disclaimed any contention that ordering Defendants to comply with the statute's procedural limitations "would require" the Secretary "to reach an outcome different from termination of TPS for South Sudan (such as redesignation or extension)."  Doc. No. 50 at 5.  Nor is there any reason to believe the outcome would be different given that the State Department has already made plain that it has no concerns with terminating TPS status for South Sudan.  AR000775-AR000776.  And insofar as Plaintiffs claim an entitlement to have the Secretary follow the TPS statute's procedural provisions before terminating a TPS designation, that "would be an entitlement to nothing but

procedure," which the Supreme Court has deemed "inadequate" to form the basis of a protected interest under the Due Process Clause. *Town of Castle Rock*, 545 U.S. at 764; *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("But deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").

*Fourth*, the procedural due process constraints that Plaintiffs seek to invoke do not apply to the government's determinations to designate, extend, or terminate a TPS designation. *See, e.g.*, *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption."); *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245-46 (1973) (distinguishing, for due process purposes, between agency decisions that "adjudicate disputed facts in particular cases" and those that involve "the formulation of a basically legislative-type judgment, for prospective application only"). These constraints instead come into play when the government "adjudicat[es]" an individual's "rights or liabilities." *Harper v. Werfel*, 118 F.4th 100, 115 (1st Cir. 2024); *see Trager v. Peabody Redevelopment Auth.*, 367 F. Supp. 1000, 1002 (D. Mass. 1973) ("The procedural due process requirements of notice and hearing attach themselves wherever there is need for an adjudicative hearing."). They do not, by contrast, apply where—as here—the government "weigh[s] general information and ideas affecting relatively large numbers of people . . . whose rights are affected as part of" the government's execution of "an overall [legislative] scheme." *Id.* at 1002. Plaintiffs' procedural due process claim is predicated on the "three-part balancing test articulated" in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Doc. No. 94-1 at 74. But *Mathews* is entirely the wrong framework, as it applies to "individual adjudications."

*Garcia-Rubiera v. Fortuno*, 665 F.3d 261, 272 (1st Cir. 2011). Permitting Plaintiffs to amend their complaint to plead a claim based on *Mathews* would thus be futile.

*Fifth*, Plaintiffs' allegations turn exclusively on statutory procedural requirements and thus fail to state a due process claim on their own terms. Plaintiffs claim that South Sudan's TPS designation was terminated without due process of law based solely on their allegations that the Secretary failed to follow certain "procedural safeguards in *the TPS statute*." *See* Doc. No. 94-1 at 74 (emphasis added). But, as "[t]he First Circuit has . . . confirmed," "not every statutory violation has a 'constitutional dimension' or is '[ ]tethered to the abridgment of constitutional rights.'" *United States v. Sabean*, 2016 WL 5721135, at *7 (D. Me. Oct. 3, 2016) (citing *United States v. Adams*, 740 F.3d 40, 43 (1st Cir. 2014)); *see Arguello v. Noem*, No. 2:25-cv-00786-RJS, 2025 WL 2896849, at *6 (D. Utah Oct. 9, 2025) ("a statutory violation does not necessarily amount to a constitutional procedural due process violation").

The two cases that the proposed amended complaint itself cites on this issue helpfully illustrate the point. *See* Doc. No. 94-1 at 73-74. In *Portillo-Rendon v. Holder*, 662 F.3d 815 (7th Cir. 2011) (Easterbrook, J.), the Seventh Circuit took pains to distinguish between alleged due process violations and alleged statutory or regulatory violations: "it is appropriate to consider the Constitution only if the statute and regulations are deficient." *Id.* at 817. The court explained that if an agency failed to provide the "process required by the statute," the court could "provide relief on statutory grounds." *Id.* And it cautioned that "intoning 'due process'" would not "cover" the same ground as the procedural protections afforded by statutes and regulations. *Id.* Subsequently, in *Adame v. Holder*, 762 F.3d 667 (7th Cir. 2014), the Seventh Circuit cited *Portillo-Rendon* and included a parenthetical explanation stating that "a petitioner may have a legal claim when she can show statutory procedural shortfalls." *Id.* at 672. The point is that an agency's failure to abide by

statutory procedures may give rise to a *statutory* claim—but a mere statutory violation does not, without more, amount to a constitutional violation.

In short, a failure to abide by statutory *procedural* requirements would rise to a due process violation only if those requirements encompassed or were coextensive with the demands of the Due Process Clause itself.  And Plaintiffs' proposed amendments do not allege or even suggest that the Due Process Clause itself—independent of the TPS statute—would require the Secretary to consult with any other agencies or publish the basis for her determination in the Federal Register before terminating a country's TPS designation.  Plaintiffs' proposed amendments cannot state a cognizable procedural due process claim, and are therefore futile.

**B.      Plaintiffs' proposed excess of authority claim is futile.**

Plaintiffs also seek to add a claim alleging that the Secretary's termination of South Sudan's TPS designation was in excess of statutory authority because the TPS statute refers to the "Attorney General"—not the Secretary.  *See* Doc. No. 94-1 at 75-80.  They observe that the TPS statute references the "Attorney General" throughout, including by providing that "[i]f the Attorney General determines" that the conditions for a country's TPS designation are no longer met, "the Attorney General shall terminate the designation."   8 U.S.C. § 1254a(b)(3)(B). Accordingly—notwithstanding their prior (and current) representations to the Court that TPS authority was transferred to the Secretary—Plaintiffs now claim that only the Attorney General has authority over TPS designations, extensions, and terminations.  Plaintiffs therefore claim that the Secretary lacked statutory authority to terminate South Sudan's TPS designation.

As an initial matter, this proposed claim is a non-constitutional claim, and the Supreme Court has conclusively held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Doe*, 146 S. Ct. at 2137.  The Supreme Court did not carve out excess-of-

authority claims from its holding, and even observed that the potential for similarly "farfetched" excess-of-authority-type claims provides no basis to narrow the scope of the judicial-review bar. *See id.* at 2136–2137.

In addition, this proposed claim would be futile in the ultimate sense in that—if accepted— it would mean that the Secretary lacked authority to *designate* South Sudan for TPS in the first instance. Plaintiffs do not contend otherwise and offer no theory to distinguish the authority to terminate from the authority to designate. Both provisions of the TPS statute refer to the "Attorney General." 8 U.S.C. § 1254a(b)(1), (b)(3)(B). If the Court were to find that the Secretary lacks authority over TPS determinations—such that the termination of South Sudan's TPS designation lacks effect—it would likewise mean that South Sudan's initial TPS designation (and subsequent extensions) lacked legal effect as well. Plaintiffs' success on the law would strip them of the protections they seek to maintain, making this claim both truly futile and self-defeating.

Moreover, in their original and currently operative complaint, Plaintiffs represented to the Court that the "Secretary of the U.S. Department of Homeland Security"—not the Attorney General—"has statutory authority over all TPS extension, termination, and designation decisions," and they specifically cited 6 U.S.C. § 557 as "transferring" the relevant "functions from the Attorney General" to the Secretary—the same statutory provision that they now insist does not transfer any TPS functions at all. Doc. No. 1 at 8. Perhaps most glaringly, Plaintiffs' proposed amended complaint itself *continues* to represent that the "Secretary of the U.S. Department of Homeland Security"—not the Attorney General—"has statutory authority over all TPS extension, termination, and designation decisions," and continues to cite 6 U.S.C. § 557 as "transferring" the relevant "functions from the Attorney General" to the Secretary. Doc. No. 94-1 at 10. That appears to be an internal contradiction, not an effort at pleading in the alternative. The Court should thus

treat this issue as forfeited or at minimum uncontested, in light of the proposed amendments' internal contradictions.

Regardless, Plaintiffs are plainly wrong on the merits. To be sure, the TPS statute, 8 U.S.C. § 1254a, refers to the "Attorney General"—and not DHS or the Secretary of Homeland Security— but that is because DHS did not exist when the TPS program was created. In conjunction with creating DHS, the Homeland Security Act of 2002 (HSA), Pub. L. No. 107-296, 116 Stat. 2135, *transferred* immigration functions from the Department of Justice and the Immigration and Naturalization Service (INS) to DHS and the Secretary of Homeland Security. The HSA provides, as relevant here, that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers . . . ." 8 U.S.C. § 1103(a). And it further provides that, "[w]ith respect to any function transferred by or under this chapter . . . reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred." 6 U.S.C. § 557.

Accordingly, the administration of the TPS statute was transferred to the Secretary, and all references to the "Attorney General" in the TPS statute are now deemed to refer to the Secretary. As the Supreme Court has now clearly stated: "Responsibility for TPS decisions rests with the Secretary of Homeland Security." *Doe*, 146 S. Ct. at 2129.

Section 1103(a) carves out functions conferred upon the Attorney General from those transferred to the Secretary, but this same section specifies that these conferred—and thus

11

reserved—functions pertain to those previously exercised by the Executive Office for Immigration Review (EOIR):  "The Attorney General shall have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by [EOIR], or by the Attorney General with respect to [EOIR] . . ."  8 U.S.C. § 1103(g).  EOIR did not previously administer the TPS statute.  Therefore, the Attorney General did not retain TPS functions, which have been transferred to the Secretary.  If § 1103(a) reserved to the Attorney General *all* functions that the Attorney General previously exercised, as Plaintiffs contend, then § 1103(g) would be redundant.  There would be no need to specify that the Attorney General continues to retain the functions that the Attorney General previously exercised with respect to EOIR.  And it is a cardinal rule of statutory construction that courts should "avoid" interpreting a statute in a way that would render "some words altogether redundant."  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995).

To that end, this Court and others have regularly recognized that the HSA transferred administration of the INA from the Attorney General to the Secretary.  *See, e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 398 n.2 (2019) ("We replace 'Attorney General' with 'Secretary' because Congress has empowered the Secretary to enforce the Immigration and Nationality Act."); *Novack v. Miller*, 727 F. Supp. 3d 70, 74 n.2 (D. Mass. 2024) ("Enforcement of the INA has been transferred from the Attorney General to the Secretary of Homeland Security.").

And, again, the Supreme Court has now clearly stated: "Responsibility for TPS decisions rests with the Secretary of Homeland Security."  *Doe*, 146 S. Ct. at 2129.  This was no offhand or unreasoned statement.  As support, the Supreme Court cited 6 U.S.C. §§ 552(d) and 557—making clear that it specifically considered and accepted the transfer of TPS authority from the Attorney

General to the Secretary. *Id.* Throughout, the Supreme Court unequivocally interpreted the TPS statute as pertaining to the Secretary. That analysis controls this case.

No court has ever questioned the Secretary's administration of the TPS statute on transfer-of-authority grounds. To the contrary, several courts—in addition to the Supreme Court just last month—have expressly recognized the HSA as transferring authority for the administration of the TPS statute to the Secretary. *See, e.g.*, *Saget v. Trump*, 375 F. Supp. 3d 280, 297 (E.D.N.Y. 2019) (citing 8 U.S.C. § 1103 and 6 U.S.C. § 557) ("Congress subsequently transferred authority to make TPS designations from the Attorney General to the Secretary of the Department of Homeland Security"); *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 582 (D. Md. 2025) (citing 6 U.S.C. § 557 as "conferring certain authorities granted by statute to the Attorney General, including those relating to TPS, to the Secretary of Homeland Security"). Moreover, the consistent, unbroken practice of DHS exercising TPS authority—including designating, extending, and terminating TPS for dozens of countries over more than two decades—constitutes a contemporaneous and long-standing administrative construction of the transfer that courts have universally accepted. *See, e.g.*, *Loper Bright Ent. v. Raimondo*, 603 U.S. 369, 386 (2024) (recognizing that "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." (alterations accepted; internal quotation marks omitted)); *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014); *West Virginia v. EPA*, 597 U.S. 697, 747 (2022) (Gorsuch, J., concurring) ("A 'contemporaneous' and long-held Executive Branch interpretation of a statute is entitled to some weight.").

## IV.   CONCLUSION

The Court should deny Plaintiffs' motion for leave to file an amended complaint.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: July 27, 2026                    By:    */s/ Michael L. Fitzgerald*
                                               MICHAEL L. FITZGERALD
                                               Assistant United States Attorney
                                               U.S. Attorney's Office
                                               1 Courthouse Way, Ste. 9200
                                               Boston, MA 02210
                                               (617) 748-3266
                                               michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant U.S. Attorney

14