UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AFRICAN COMMUNITIES TOGETHER, et al.,

                Plaintiffs,

      v.

MARKWAYNE MULLIN, *Secretary of Homeland Security, in his official capacity*, et al.,

                Defendants.

Case No. 25-cv-13939-PBS

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED
MOTION TO POSTPONE EFFECTIVE DATE OF AGENCY ACTION**

**I.**      **INTRODUCTION**

Just over a month ago, the Supreme Court rejected challenges materially indistinguishable from Plaintiffs' challenges to the termination of two other countries' Temporary Protected Status ("TPS") designations, reversing district courts that had postponed those terminations. *See Mullin v. Doe*, 146 S. Ct. 2121 (2026). That decision came after the Supreme Court twice stayed other district court orders postponing the termination of another country's TPS designation. *See Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728, 2729 (2025); *Noem v. Nat'l TPS Alliance*, 146 S. Ct. 23, 24 (2025). And the First Circuit has now summarily reversed the Court's previous postponement order. *See Afr. Communities Together v. Mullin*, 2026 WL 2186097, at *1 (1st Cir. July 29, 2026).

Plaintiffs invite the Court to try again, offering two (supposedly) new claims—an *ultra vires* claim and a procedural due process claim. *See* Doc. No. 94-1 at 71-80. But, to date, Plaintiffs have not been granted leave to assert these new claims. And they cannot show a likelihood of success—and thus obtain preliminary relief—based on claims that are not even before the Court.

1

Nor, even if the claims were before the Court, would Plaintiffs' second-string claims be likely to succeed where their first-round picks have already admittedly failed. To start, Plaintiffs' *ultra vires* claim is a non-constitutional claim, so it is plainly foreclosed by the TPS statute's judicial-review bar. It also fails on its own terms. It is premised on Plaintiffs' belief that the termination of South Sudan's TPS designation was invalid because only the Attorney General—not the Secretary of Homeland Security—has authority over TPS determinations. But if that extraordinary claim were true, it would also mean that South Sudan was not lawfully designated for TPS in the first instance. Additionally, Plaintiffs' procedural due process claim is not "new." Indeed, it raises the *same* alleged process defects that Plaintiffs asserted previously and that the Supreme Court deemed categorically unreviewable. Plaintiffs now affix a constitutional label to those same regurgitated allegations, but that is a transparent attempt to evade Congress's limits on judicial review and the Supreme Court's holding effectuating that limitation, by the simple expedient of labeling.

Plaintiffs' new claims are unreviewable and fail on their merits. Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest weigh against preliminary relief. The Government and the public share an interest in ensuring that the Secretary can carry out the responsibilities, assigned by Congress, to weigh the statutory factors governing TPS designations and make TPS determinations. And in this case, as the Secretary found, the conditions for South Sudan's TPS designation are no longer met. Delay of the Secretary's determination threatens to undermine the United States' foreign policy and national interest, particularly where Congress has provided the Secretary with broad discretion to assess conditions in foreign countries and reach determinations regarding TPS.

The Court should deny Plaintiffs' renewed motion for postponement.

## II.    BACKGROUND

### A.  Procedural Background

On February 12, 2026, the Court issued an order pursuant to 5 U.S.C. § 705 postponing the Secretary of Homeland Security's termination of South Sudan's TPS designation.  Doc. No. 65. The Court did so based on its conclusion that Plaintiffs were likely to succeed on the merits of two of their claims alleging that the termination of South Sudan's TPS designation was pretextual and that the Secretary failed to consult with appropriate agencies.  *Id.* at 27-36.  As a necessary predicate for that conclusion, the Court concluded that the TPS statute's judicial review bar, 8 U.S.C. § 1254a(b)(5)(A), did not preclude its review of certain aspects of Plaintiffs' claims.  *Id.* at 15-24.  Specifically, the Court concluded that § 1254a(b)(5)(A) applies only to "the substantive 'determination' of whether conditions for TPS designation continue to be met," not the Secretary's compliance with "procedural requirements."  *Id.* at 16.

On June 25, 2026, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims," including procedural determinations, reserved ruling on whether the bar applies to constitutional claims, and held that an equal-protection claim—analogous to the one asserted by Plaintiffs here—was not viable.[1]  *Mullin*, 146 S. Ct. at 2137-2140. The Supreme Court stated that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security."  *Id.* at 2129.  And it rejected the argument "that § 1254a(b)(5)(A) applies only to substantive claims, not those based on alleged procedural errors, *id.* at 2134, as well as the argument that § 1254a(b)(5)(A) applies to "only the Secretary's ultimate 'determination'—not any subsidiary decision, such as whether to consult other agencies," *id.*  at 2136.

Following the Supreme Court's decision, Plaintiffs sought leave to file an amended

---

[1] Plaintiffs do not seek preliminary relief based on their equal-protection claim.

complaint adding the two proposed claims that form the basis of this renewed motion for postponement.  *See* Doc. No. 94.  Plaintiffs' motion for leave to file an amended complaint remains pending.  The First Circuit also summarily reversed this Court's previous postponement order.  *See Afr. Communities Together*, 2026 WL 2186097, at *1.  Plaintiffs subsequently filed this "renewed" motion to postpone the effective date of the termination of South Sudan's TPS designation.  Doc. No. 116.  Plaintiffs' renewed motion for relief under 5 U.S.C. § 705 is premised entirely on their procedural due process and *ultra vires* claims.  *See* Doc. No. 117.

### B. Legal Background

The Immigration Act of 1990 established a program to permit temporary and discretionary protection in the United States for aliens from designated countries experiencing ongoing armed conflict, "extraordinary and temporary conditions" that temporarily prevent nationals of the country from safely returning, or an environmental disaster that temporarily renders the country unable to adequately handle the return of its nationals.  Pub. L. No. 101-649, 104 Stat. 4978 (1990).  As discussed further below, the statute authorizes the Secretary, "after consultation with appropriate agencies of the Government," to designate countries for TPS if the Secretary finds that certain conditions are met.  *See* 8 U.S.C. § 1254a(b)(1)(A); 8 U.S.C. § 1254a(b)(1)(C).  If the Secretary later determines that the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation[.]" 8 U.S.C. § 1254a(b)(3)(B).  "There is no judicial review of any determination of the [Secretary] with respect to the … termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A).

### III. STANDARD

"The same standard that governs the issuance of a stay under § 705 is the standard that governs the issuance of a preliminary injunction." *California v. Kennedy*, 802 F. Supp. 3d 273,

281 (D. Mass. 2025).  Accordingly, to obtain their requested relief, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  The moving party "bears the burden of satisfying each of these four elements." *Akebia Therapeutics, Inc. v. Azar*, 443 F. Supp. 3d 219, 225 (D. Mass. 2020).  But, even then, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

## IV.    ARGUMENT

### A.  Plaintiffs' *ultra vires* claim is not likely to succeed on the merits

Plaintiffs claim that the Secretary's decision to terminate South Sudan's TPS designation was *ultra vires* because, in their view, only the Attorney General has the authority to terminate a country's TPS designation.  Doc. No. 117 at 12-21.  This claim is unreviewable because it is a non-constitutional claim, and the Supreme Court has held that "the TPS statute's judicial-review bar applies to *all* non-constitutional claims." *Doe*, 146 S. Ct. at 2137 (emphasis added).  The Supreme Court did not carve out *ultra vires* claims from its holding and even observed that the potential for similarly "farfetched" claims provides no basis to narrow the scope of the judicial-review bar. *See id.* at 2136–2137.  As such, this Court cannot and should not proceed further.

Plaintiffs' sole contrary argument is that the judicial-review bar does not apply because § 1254a(b)(5)(A) refers only to the Attorney General.  Doc. No. 117 at 18.  But that gets *Doe* wrong: The Supreme Court squarely held that the statute barred judicial review of a TPS determination "made by the Secretary." *Doe*, 146 S. Ct. at 2134.  Confining the review bar solely to decisions of the Attorney General is a non-starter in the wake of that decision.

Even if Plaintiffs' *ultra vires* claim were reviewable, it fails on the merits.  To start, the

5

Supreme Court unequivocally stated: "Responsibility for TPS decisions rests with the Secretary of Homeland Security." *Id.* at 2129 (citing 6 U.S.C. §§ 552(d), 557). Plaintiffs insist that this statement "carries no precedential effect" because the issue was not contested. Doc. No. 117 at 20. But it is not as though the Supreme Court assumed without deciding the issue because it was undisputed by the parties—something it knows how to do. *See, e.g.*, *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 6 (2019) ("we assume without deciding" an issue that "[t]he parties in this case did not dispute"); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 n.1 (2014) ("We assume, without deciding, a point the parties do not dispute."). Far from it: as support for its assertion that the Secretary exercises TPS authority, the Supreme Court cited 6 U.S.C. §§ 552(d) and 557—making clear that it specifically considered and accepted the transfer of TPS authority from the Attorney General to the Secretary. *See Doe*, 146 S. Ct. at 2129. The Supreme Court then construed § 1254a(b)(5)(A) by replacing "Attorney General" with "Secretary of Homeland Security" in the statutory text. *Id.* at 2129–30, 2133. This understanding was essential to the Court's application of the review bar to the Secretary's TPS terminations. This aspect of the decision is therefore binding.

Even if this statement did not constitute part of the holding in *Doe*, the Supreme Court's supporting citations—as well as its repeated references to the Secretary throughout its opinion—make the proposition at least "considered dicta," which lower courts remain "bound" to follow, "particularly when, as here, [the] dictum is of recent vintage and not enfeebled by any subsequent statement." *McCoy v. Massachusetts Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991). The Court should be "particularly inclined to treat" this statement "as authoritative since, were it not accurate," this aspect of *Doe* "would have been a largely theoretical exercise." *Cuevas v. United States*, 778 F.3d 267, 273 (1st Cir. 2015). The necessary implication of Plaintiffs' claims is that

6

the Supreme Court's recent decision with respect to the judicial-review bar—issued after full briefing, oral argument, and deliberation—*has no legal or practical effect*. Indeed, Plaintiffs embrace that extraordinary view. *See* Doc. No. 117 at 18 n.8 (arguing that, "because the TPS statue's review bar does not apply to *any* determinations rendered by the Secretary," this Court "retains jurisdiction to consider the merits of Plaintiffs' claims that arise directly under the APA, including" those rejected by the Supreme Court). That is not how "the hierarchy of the federal court system" works. *Hutto v. Davis*, 454 U.S. 370, 375 (1982). Plaintiffs observe that "*the Supreme Court* is free to revisit its conclusions," as well as its dicta, Doc. No. 117 at 20 (emphasis added), but that says nothing about the authoritative nature of the decision in this Court.

Plaintiffs are correct that when Congress created TPS in 1990, it "repeatedly and unambiguously made clear that the "Attorney General"—and only the "Attorney General"—possessed the authority to terminate a TPS designation. *See* Doc. No. 117 at 8 (citing 8 U.S.C. § 1254a(b)(3)(B), (d)(3)). Plaintiffs are also correct that, in the decade that followed, the Attorney General decided when to designate a country for TPS and when to extend or terminate a TPS designation. *Id.* But that changed after Congress created DHS and reorganized responsibility for numerous Executive Branch immigration functions. A straightforward reading of the statutes, the Supreme Court's decision last month, and every lower-court decision for the past 24 years confirm that the Secretary of Homeland Security holds the statutory authority to designate countries for TPS and to extend or terminate those designations.

**Statutes.** In 2002, Congress passed the Homeland Security Act, which unambiguously transferred immigration functions—including TPS-related functions—from the Attorney General to the Secretary of Homeland Security, with certain exceptions. *See* 8 U.S.C. § 1103 (charging the Secretary of Homeland Security "with the administration and enforcement" of all laws

"relating to the immigration and naturalization of aliens," subject to limited exceptions for duties specifically conferred on the President, Attorney General, or other executives). Section 1103(a) includes a proviso stating that functions are transferred to the Secretary, "except insofar as" the relevant laws "relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State," and certain other officials.

Plaintiffs read this proviso to mean that *all* previous statutory references to the Attorney General are not transferred to the Secretary of Homeland Security. But that would be self-defeating: Section 1103(a) would transfer the Attorney General's functions in one breath while reserving them to the Attorney General at the very same time. It is a cardinal rule of statutory construction that courts should "avoid" interpreting a statute in a way that would render "some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995). Yet Plaintiffs would have the proviso swallow the rule that immigration functions were transferred to DHS.

Instead, § 1103(a)'s proviso is properly understood to explain that the transfer covered functions except otherwise provided elsewhere. For instance, the same section specifies that the Attorney General continues to retain "such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to [EOIR] . . ." 8 U.S.C. § 1103(g). On Plaintiffs' view, this provision is superfluous because those functions were already excepted from transfer by § 1103(a)'s proviso. Plaintiffs identify no provision that would place TPS in the exception created by the proviso rather than in the general group of immigration functions that were transferred to DHS—for example, EOIR did not previously administer the TPS statute. Therefore, the Attorney General did not retain such functions, which have been transferred to the Secretary.

Congress did not change the TPS statute's text to refer to the Secretary of Homeland Security because it did not need to.  Instead, it relied on a series of transfer and reference-updating provisions built into the Homeland Security Act to accomplish the shift in authority.  While 8 U.S.C. § 1103 charged the Secretary with the "administration and enforcement" of the immigration laws, 6 U.S.C. § 557 operated to update all other federal laws with respect to functions that were transferred to the Secretary under the Act:

> With respect to any function transferred by or under this chapter . . . reference in any other Federal law to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred.

*Id.*  Because TPS administration was a function of the Attorney General that was transferred to DHS, § 557 operates to update every reference to the Attorney General in 8 U.S.C. § 1254a to mean the Secretary.  *Id.*

**Judicial Constructions.**  Reflecting the statutes' clarity, every court discussing the issue for the last 24 years has recognized the transfer of TPS authority to the Secretary of Homeland Security.  Again, the Supreme Court has now clearly stated that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security."  *Doe*, 146 S. Ct. at 2129.  As discussed, this was no offhand or unreasoned statement.  Throughout its decision, the Supreme Court unequivocally interpreted the TPS statute as pertaining to the Secretary.  That analysis controls this case.

Lower courts have universally adopted this construction, too.  The Eleventh Circuit in *Mejia Rodriguez v. DHS*, 562 F.3d 1137 (11th Cir. 2009), recognized that although the TPS statute references the Attorney General, decision-making authorities were transferred to the Secretary of DHS by statute (citing 8 U.S.C. § 1103(a)).  The district court in *Saget v. Trump*, 375 F. Supp. 3d 280, 297 (2019), likewise recognized 8 U.S.C. § 1103 and 6 U.S.C. § 557 as the basis for the transfer of TPS designation authority to the Secretary.  More recently, in *CASA, Inc. v. Noem*, 792

F. Supp. 3d 576, 582 (2025), the District of Maryland explicitly described 6 U.S.C. § 557 as "conferring certain authorities granted by statute to the Attorney General, including those relating to TPS, to the Secretary of Homeland Security." The district courts in *National TPS Alliance v. Noem*, 773 F. Supp. 3d 807 (2025), *National TPS Alliance v. Noem*, 798 F. Supp. 3d 1108 (2025), and the Ninth Circuit in its 2025 and 2026 decisions in that same litigation, *National TPS Alliance v. Noem*, 150 F.4th 1000 (2025), *National TPS Alliance v. Noem*, 166 F.4th 739 (2026), all proceeded on the premise that the Secretary of Homeland Security exercises the authority granted by 8 U.S.C. § 1254a. Plaintiffs have not cited a single decision in which a court has concluded the Secretary of Homeland Security lacked the authority to designate a country for TPS or terminate a country's TPS designation.

**Self-Defeating Outcome.** As a practical matter, Plaintiffs' theory is self-defeating. Even if this Court were to accept it, that would only mean that the Secretary lacked authority to *designate* South Sudan for TPS in the first instance. Plaintiffs do not contend otherwise and offer no theory to distinguish the authority to terminate from the authority to designate. Both provisions of the TPS statute refer to the "Attorney General." 8 U.S.C. § 1254a(b)(1), (b)(3)(B). If the Court were to find that the Secretary lacks authority over TPS determinations—such that the termination of South Sudan's TPS designation lacks effect—it would likewise mean that South Sudan's initial TPS designation (and subsequent extensions) lacked legal effect as well. Plaintiffs' success on the law would strip them of the very protections they seek to maintain, making this claim self-refuting. Indeed, it is a striking tell of how profoundly unmeritorious Plaintiffs' claims have become: even *accepting* their arguments would compel a conclusion that they are not entitled to relief here.

Plaintiffs attempt to address this reality in four makeweight sentences jammed into a footnote. Doc. No. 117 at 17 n.7. All acknowledge that success on this theory would doom the

10

validity of South Sudan's TPS designation. Each is merely an attempt to squeeze more time out of what would be, in their theory, a TPS designation that has violated the law since day one.

Plaintiffs first claim that "any challenge to the initial TPS designation would need to be considered in the context of a separate and otherwise justiciable lawsuit." *Id.* But is not at all apparent why, and Plaintiffs offer no support for this view. If the Court finds that the Secretary lacks authority over TPS terminations (and thus, designations), the government would not need to wait for a lawsuit before following the Court's analysis and deeming South Sudan's initial designation invalid. Plaintiffs next claim that, in this event, the APA would "require[] the government to explore alternatives to outright termination," citing *DHS v. Regents*, 591 U.S. 1, 28-29 (2020). Doc. No. 117 at 17 n.7. But the passage at issue in *Regents* rested on the conclusion that the program in question was *not* wholly unlawful ab initio—and no similar escape hatch would be available if Plaintiffs' theory were to succeed. Moreover, even if *Regents* recognized such an APA claim in general, it would still be a *non-constitutional* claim, and so *Doe* would clearly preclude it. Finally, Plaintiffs claim that "mutually explicit understandings" gave them "vested due process interests." Doc. No. 117 at 17 n.7. To the extent Plaintiffs mean by this to assert a substantive due process right to maintaining a TPS designation that they argue has been *ultra vires* from the start, nothing in the Nation's history or tradition could begin to support that argument. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). And to the extent they instead mean to argue that they have a procedural due process claim, that argument fails for the reasons explained below. Moreover, to the extent there was any "mutually explicit understanding[]" between Plaintiffs and the government, it was that *the Secretary*—not the Attorney General—would decide whether to designate, extend, and/or terminate a country's TPS designation.

**B. Plaintiffs' procedural due process claim is not likely to succeed on the merits.**

Plaintiffs also claim that the termination of South Sudan's TPS designation violated their procedural due process rights. *See* Doc. No. 94-1 at 71-75. They allege that they have protected liberty and property interests "in obtaining and maintaining TPS status and in the attendant benefits that come with that status," and that the termination determination deprived them of those interests without due process of law because, in their view, it was made without following the requisite procedural steps "in the TPS statute." *Id.* at 70, 73. The TPS statute directs the Secretary to "consult[] with appropriate agencies" before determining whether to terminate a TPS designation. 8 U.S.C. § 1254a(b)(3)(A). But Plaintiffs claim that "the Secretary did not meaningfully consult with appropriate federal agencies." Doc. No. 94-1 at 74. Moreover, the TPS statute directs the Secretary to "review the conditions in the foreign state" at issue, and if the Secretary determines that the country's TPS designation is no longer justified, to publish "the basis for the determination" in the Federal Register. 8 U.S.C. § 1254a(b)(3)(A), (B). Plaintiffs argue, however, that the Secretary did not follow these statutory requirements because her "decision-making was predetermined, pretextual, and procedurally deficient." Doc. No. 94-1 at 74. Plaintiffs' procedural due process claim is unlikely to succeed for at least five reasons.

*First*, this claim seeks to challenge the Secretary's "[t]ermination of South Sudan's TPS designation." Doc. No. 94-1 at 69. The TPS statute clearly states, however, that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A). Plaintiffs' proposed claim seeks "precisely what Congress [has] barred" and "falls within the plain text of § 1254a(b)(5)(A)'s judicial-review bar," which "does not distinguish statutory and constitutional claims." *Mullin v. Doe*, 146 S. Ct. 2121, 2140 (2026) (Thomas, J., concurring).

*Second*, and just as fundamentally, § 1254a(b)(5)(A) bars review of this claim because it is the *same* type of claim that the Supreme Court already deemed unreviewable. The plaintiffs in *Doe*—like Plaintiffs here—sought to challenge a TPS termination "based on alleged procedural errors," including that the Secretary did not adequately consult with appropriate federal agencies. *Doe*, 146 S. Ct. at 2134. The plaintiffs in *Doe*—like Plaintiffs here—similarly claimed that the Secretary procedurally erred by making a "preordained decision" to terminate a TPS designation. *Id.* at 2139. The Supreme Court, however, held that the judicial-review bar applied to claims based on alleged procedural and substantive violations alike. *Id.* at 2134–2137. And, in so doing, it took care to emphasize the "importan[ce]" of "ensur[ing] that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering." *Id.* at 2136.

Plaintiffs have flouted that important principle by admittedly seeking to challenge the *same* alleged procedural violations under a constitutional label. *See* Doc. No. 95 at 10 ("Plaintiffs' new claims are based on the same factual allegations in the initial Complaint[.]"). The Court should look beyond the mere label and recognize this claim for what it clearly is: a challenge based on the Secretary's purported failure to adhere to *statutory* requirements. *See Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (Breyer, J.) ("In examining a complaint we are bound to look beyond the literal meaning of the language used to ascertain the real cause of the complaint."). "Any other result would elevate form over substance and allow parties to evade" the TPS judicial-review bar "by relabeling their" statutory claims as constitutional ones. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

It would be extraordinary if Plaintiffs could—like the flip of a switch—so easily and completely sidestep § 1254a(b)(5)(A) by restyling the same *previously unreviewable* procedural disputes as constitutional ones. Under Plaintiffs' theory, the Secretary's alleged failure to

meaningfully consult with appropriate agencies was unreviewable before—but has become reviewable now—merely because they have called this alleged statutory violation a constitutional one.  If that were how things worked, what is the significance of the Supreme Court's conclusion that the judicial review bar applies to claims based on alleged procedural errors?  Presumably, *all of the claims* that *Doe* took off the table could be reasserted as procedural due process claims. Indeed, that is precisely what Plaintiffs' proposed amendments seek to accomplish.  *See* Doc. No. 94-1 at 74 (seeking to vacate the termination because "the Secretary did not meaningfully consult with appropriate federal agencies"); *id.* (seeking to vacate the termination because "the Secretary's decision-making was predetermined, pretextual, and procedurally deficient").  The Court "should not lightly conclude that Congress enacted a self-defeating statute" that can be avoided with the simple expedient of a change of labels.  *Borden v. United States*, 593 U.S. 420, 460 (2021) (quotations omitted); *see Abbott v. Perez*, 585 U.S. 579, 594-95 (2018) (cautioning against an over-emphasis on "labels" that could permit "manipulation" of courts' jurisdiction).

*Third*, the procedural due process constraints that Plaintiffs seek to invoke do not apply to the government's determinations to designate, extend, or terminate a TPS designation.  *See, e.g.*, *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption."); *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245-46 (1973) (distinguishing, for due process purposes, between agency decisions that "adjudicate disputed facts in particular cases" and those that involve "the formulation of a basically legislative-type judgment, for prospective application only").  These constraints instead come into play when the government "adjudicate[es]" an individual's "rights or liabilities."  *Harper v. Werfel*, 118 F.4th 100, 115 (1st Cir. 2024); *see Trager v. Peabody Redevelopment Auth.*, 367 F. Supp. 1000, 1002

14

(D. Mass. 1973) ("The procedural due process requirements of notice and hearing attach themselves wherever there is need for an adjudicative hearing."). They do not, by contrast, apply where the government "weigh[s] general information and ideas affecting relatively large numbers of people . . . whose rights are affected as part of" the government's execution of "an overall [legislative] scheme." *Id.* at 1002. Plaintiffs' procedural due process claim is predicated on the "three-part balancing test articulated" in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Doc. No. 117 at 21. But *Mathews* is entirely the wrong framework, as it applies to "individual adjudications." *Garcia-Rubiera v. Fortuno*, 665 F.3d 261, 272 (1st Cir. 2011). Plaintiffs have no prospect of succeeding on a challenge based on *Mathews* to the termination of South Sudan's TPS designation.

*Fourth*, Plaintiffs' allegations turn exclusively on statutory procedural requirements and thus fail to state a due process claim on their own terms. Plaintiffs claim that South Sudan's TPS designation was terminated without due process of law based solely on their allegations that the Secretary failed to follow certain "procedural safeguards in *the TPS statute*." Doc. No. 117 at 23 (emphasis added). But, as "[t]he First Circuit has . . . confirmed," "not every statutory violation has a 'constitutional dimension' or is '[ ]tethered to the abridgment of constitutional rights.'" *United States v. Sabean*, 2016 WL 5721135, at *7 (D. Me. Oct. 3, 2016) (citing *United States v. Adams*, 740 F.3d 40, 43 (1st Cir. 2014)); *see Arguello v. Noem*, No. 2:25-cv-00786-RJS, 2025 WL 2896849, at *6 (D. Utah Oct. 9, 2025) ("a statutory violation does not necessarily amount to a constitutional procedural due process violation").

The two Seventh Circuit cases that Plaintiffs cite on this issue helpfully illustrate the point. *See* Doc. No. 117 at 23. In *Portillo-Rendon v. Holder*, 662 F.3d 815 (7th Cir. 2011) (Easterbrook, J.), the Seventh Circuit took pains to distinguish between alleged due process violations and alleged statutory or regulatory violations: "it is appropriate to consider the Constitution only if the

15

statute and regulations are deficient." *Id.* at 817. The court explained that if an agency failed to provide the "process required by the statute," the court could "provide relief on statutory grounds." *Id.* And it cautioned that "intoning 'due process'" would not "cover" the same ground as the procedural protections afforded by statutes and regulations. *Id.* Subsequently, in *Adame v. Holder*, 762 F.3d 667 (7th Cir. 2014), the Seventh Circuit cited *Portillo-Rendon* and included a parenthetical explanation stating that "a petitioner may have a legal claim when she can show statutory procedural shortfalls." *Id.* at 672. The point is that an agency's failure to abide by statutory procedures may give rise to a *statutory* claim—but a mere statutory violation does not, without more, amount to a constitutional violation.

*Fifth*, to assert a procedural due process claim, Plaintiffs must "first" show that "there exists a liberty or property interest" to which they have "a legitimate claim of entitlement." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Where a statute creates a benefit, the plaintiff must "have more than a unilateral expectation of it." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). Accordingly, a statute may give rise to a legitimate claim of entitlement only where it places "substantive limitations" on the government's exercise of discretion, *Wakinekona*, 461 U.S. at 249, and "mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met," *Thompson*, 490 U.S. at 462.

Plaintiffs have no legitimate claim of entitlement to South Sudan's TPS designation being extended. The *Temporary* Protected Status statute provides in relevant part that—in deciding

16

whether to extend or terminate a designation—the Secretary "shall determine whether the conditions for such designation under this subsection continue to be met."   8 U.S.C. § 1254a(b)(3)(A).  It does not, however, impose any "substantive limitations" on the Secretary in determining whether these conditions continue to be met.  *Wakinekona*, 461 U.S. at 249.  And while the statute mandates *termination* in specified circumstances, it does not mandate *extending* a country's TPS designation upon a finding that certain criteria have been met.  In other words, it does not channel agency discretion by providing that, if certain "substantive predicates are present, a particular outcome must follow."  *Thompson*, 490 U.S. at 463 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).  Moreover, the decision whether to grant TPS to any particular individual is also discretionary.  *See* 8 U.S.C. § 1254a(a)(1)(A) (providing that the Secretary "may grant" TPS to a qualifying national of a designated country); 8 C.F.R. § 244.2 ("an alien may in the discretion of the director be granted [TPS] if the alien establishes that he or she" meets the eligibility criteria); *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023) (TPS is a "discretionary form of relief"); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008) (same); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018) ("the explicitly temporary nature of the [TPS] program suggests" that holders cannot establish "reliance interests").

Plaintiffs claim that TPS benefits are protected interests because they are subject to "rules or mutually explicit understandings," Doc. No. 117 at 23, citing *Perry v. Sindermann*, 408 U.S. 593 (1972).  In *Sindermann*, the Supreme Court found that even though a state college professor did not have a written contract entitling him to continued employment, he might nonetheless have a legitimate claim of entitlement to that benefit (i.e., continued employment) if there were "rules or mutually explicit understandings that support[ed] his claim of entitlement to the benefit and that he [could] invoke at a hearing."  *Id.* at 601.  But "the implied-contract aspect of *Sindermann*

17

'understandings' has been limited to the creation of property interests." *Jago v. Van Curen*, 454 U.S. 14, 18 (1981).  And, regardless, Plaintiffs cite no rules or mutually explicit understandings providing that they would be *entitled* to the extension of South Sudan's TPS designation.

Plaintiffs also contend that the TPS statute imposes certain *procedural* requirements before the Secretary may terminate a designation.  But they have disclaimed any contention that ordering Defendants to comply with the statute's procedural limitations "would require" the Secretary "to reach an outcome different from termination of TPS for South Sudan (such as redesignation or extension)."  Doc. No. 50 at 5.  Nor is there any reason to believe the outcome would be different given that the State Department has already made plain that it has no concerns with terminating TPS status for South Sudan.  AR000775-AR000776.  And insofar as Plaintiffs claim an entitlement to have the Secretary follow the TPS statute's procedural provisions before terminating a TPS designation, that "would be an entitlement to nothing but procedure," which the Supreme Court has deemed "inadequate" to form the basis of a protected interest under the Due Process Clause. *Town of Castle Rock*, 545 U.S. at 764; *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("But deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").

**C.  The non-merits considerations governing stay motions favor Defendants.**

Plaintiffs have also failed to show that they are "likely to suffer irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.  Plaintiffs assert that without TPS they would lose immigration status and potentially be subject to deportation.  Doc. No. 117 at 26.  But any harms flowing from the loss of temporary protection from removal and its associated benefits inhere in the statutory scheme that Congress designed.  Under the TPS statute, TPS recipients receive *temporary* protection from removal.  *See* 8 U.S.C. § 1254a(b)(1)(B)(i) ("substantial, but

temporary"), (b)(1)(B)(ii) ("unable, temporarily"), (b)(1)(C) ("extraordinary and temporary"), (g) ("remain in the United States temporarily").  The statute does not allow for indefinite protection.  Because the loss of temporary benefits flows from the statute itself, Plaintiffs cannot show that their alleged harms "directly result from the action which [they] seek[] to enjoin."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

In any event, "removal alone," let alone the mere possibility of future removal after removal proceedings have been completed, "cannot constitute the requisite irreparable injury" to justify a stay.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Plaintiffs argue that their removal to South Sudan or unnamed other countries "will" result in "deadly danger."  Doc. No. 117 at 26.  But that speculative prediction does not establish a clear likelihood that such harm will occur.  And the severity of an alleged harm does not speak to its likelihood of occurring.  Moreover, in the then-serving Secretary of Homeland Security's unreviewable judgment, "[r]ecent diplomatic developments . . . indicate South Sudan's willingness to ensure the safety and reintegration of its returning nationals."  *Termination of the Designation of South Sudan for [TPS]*, 90 Fed. Reg. 50,485 (Nov. 6, 2025).  Plaintiffs clearly disagree, but in matters involving such foreign policy judgments, the Court should defer to the Executive Branch.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010) ("when it comes to collecting evidence and drawing factual inferences in this area, the lack of competence on the part of the courts is marked, and respect for the Government's conclusions is appropriate" (quotation marks and citation omitted)).

Moreover, the Supreme Court has already concluded, twice, that the government suffers irreparable harm from erroneous stays of TPS terminations.  *See Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728 (2025); *Noem v. Nat'l TPS Alliance*, 146 S. Ct. 23, 24 (2025).  The harm to the government and the public interest is particularly acute and concrete here because the then-serving

Secretary determined South Sudan's TPS designation "is contrary to the national interest" for several reasons. 90 Fed. Reg. at 50,486. The Secretary found "public safety and national security risks associated with the continued designation of South Sudan," as evidenced by the fact that "[a] portion of the South Sudan [TPS] population has been subjects of administrative investigation for fraud, public safety and national security concerns." *Id.* Moreover, the Secretary found "compelling foreign policy reasons for ending the [TPS] designation for South Sudan," including the importance of "ensuring that South Sudan accepts the return of its citizens in a timely manner when the United States seeks to remove them." *Id.*

In sum, there is no public interest in further postponing the effective date of the Secretary's unreviewable termination determination—especially where Plaintiffs' claims are so plainly not viable and, in all events, are not likely to succeed.

## V.    CONCLUSION

The Court should deny Plaintiffs' motion.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: August 5, 2026                    By:    */s/ Michael L. Fitzgerald*
                                                MICHAEL L. FITZGERALD
                                                Assistant United States Attorney
                                                U.S. Attorney's Office
                                                1 Courthouse Way, Ste. 9200
                                                Boston, MA 02210
                                                (617) 748-3266
                                                michael.fitzgerald2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant U.S. Attorney