**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER; MARY DOE; DAVID DOE; PETER DOE; and JACOB DOE, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,<br><br>    *Defendants*. | Civil Action No. 1:25-cv-13939-PBS<br><br>**Leave to file granted on August 5, 2026** |

**PLAINTIFFS' REPLY IN SUPPORT OF RENEWED POSTPONEMENT MOTION**

**ARGUMENT**

### I.    Defendants Have Offered Yet Another Defective Statutory Theory

Last week, in response to Plaintiffs' *ultra vires* claim, Defendants advanced a brand new interpretive theory based on a statutory provision—8 U.S.C. § 1103(g)—that neither they nor any court had ever cited as the basis for DHS's authority to terminate a TPS designation.  They argued that the *only* functions "reserved" to the Attorney General under 8 U.S.C. § 1103(a) were "those previously exercised by" EOIR as specified in 8 U.S.C. § 1103(g).  *See* ECF 107 at 11–12. Plaintiffs responded to that argument by identifying its clear flaws, including that Defendants' EOIR-only theory is easily disproven because the Attorney General continues to exercise *non-EOIR* immigration powers that predated DHS's creation *to this day*. ECF 114 at 3–4.[1]

Apparently realizing that their EOIR-only theory is untenable, Defendants have pivoted to yet another interpretation of 8 U.S.C. §1103.  Now, they argue that section 1103(a) is "properly understood to explain that the transfer" of immigration-related functions from the Attorney General to the DHS Secretary "covered functions except otherwise provided elsewhere."  ECF 118 at 8.  But it is unclear what exactly that means.  In Defendants' view, section 1103(g) is now apparently just an "example" of a provision where Congress "provided elsewhere" that certain powers would remain with the Attorney General, rather than a provision encompassing the *only* such powers.    Presumably, Defendants have in mind other "example[s]" where Congress

---

[1] For example, in 1996, Congress established the Alien Terrorist Removal Court, which is comprised of Article III district court judges and entirely bypasses EOIR.  *See* 8 U.S.C. § 1532. Under the statute, only the "Attorney General" may initiate removal proceedings "by filing an application with the removal court."  8 U.S.C. § 1533(a)(1).  And just last month, the Attorney General filed a high-profile "application to remove" an "alien terrorist" in order to commence removal proceedings in the court.  *See* Press Release, DOJ Off. of Pub. Affs., Department of Justice Files First Case in U.S. Alien Terrorist Removal Court to Deport Afghan Alien Who Supported Her Family's Plans for Election-Day Shooting (July 30, 2026), https://perma.cc/2CXR-BXFN. Under Defendants' EOIR-only theory, *only the DHS Secretary had authority to file that application*.

"provided elsewhere" that the Attorney General has immigration-related powers.[2]  But if all of that is true, then it is *also* true that Congress "provided elsewhere" that only the "Attorney General" has the authority to terminate a TPS designation.  *See* 8 U.S.C § 1254a.  Plaintiffs actually agree with Defendants' new "provided elsewhere" rule, as long as it is applied *consistently*.[3]

Defendants fall back on what they term "judicial constructions" but are in fact merely background *assumptions* that have persisted over time because no party—until Plaintiffs here—had ever questioned the DHS Secretary's TPS termination authority.  *See* ECF 118 at 9–10.[4]  The category of judicial decisions that never considered or addressed Plaintiffs' *ultra vires* argument includes *Mullin v. Doe*, 146 S. Ct. 2121 (2026).  Defendants make much of *Mullin*'s reference in the background section to 6 U.S.C. §§ 552(d) and 557, *see* ECF 118 at 6, but those are just housekeeping provisions; the Supreme Court made no mention of 8 U.S.C. §§ 1103(a) or (g), the provisions upon which Defendants rely.  Nor were the Supreme Court's references to the "Secretary" somehow "essential" to the Court's holding, *contra* ECF 118 at 6, which turned on the meaning of the word "determination" and similar language and had nothing to do with the identity of the deciding official, *see Mullin*, 146 S. Ct. at 2134–37.  *Mullin*'s holding addressed the *types* of claims that were subject to the TPS review bar *assuming* the review bar applied to the

---

[2] *See* ECF 114 at 3–4 (discussing Attorney General's authority to initiate "alien terrorist" removal proceedings, 8 U.S.C. § 1533(a)(1); exercise certain land acquisition authorities, *id.* § 1103(b); and process denaturalization certificates, *id.* § 1451(f)).

[3] Plaintiffs' reading of section 1103(a) would not "swallow the rule that immigration functions were transferred to DHS."  ECF 118 at 8.  As Plaintiffs have previously explained, section 1103(a) only reserves powers vested in the "Attorney General" specifically, not powers vested in or delegated to subagencies (like INS) or transferred by the Reorganization Plan.  *See* ECF 117 at 7–10; ECF 114 at 2–4.

[4] Defendants previously leaned on the DHS Secretary's historical "practice" of issuing TPS terminations.  *See* ECF 107 at 13.  Defendants no longer rely on that history, presumably recognizing that courts routinely reject longstanding agency interpretations when they are contrary to a statute's text—and indeed have a duty to do so.  *See* ECF 114 at 5 (discussing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)).

2

challenged *action* in the first place.  That reading does not deprive *Mullin* of "legal or practical effect," ECF 118 at 6–7, because going forward—under Plaintiffs' correct reading—it will be clear that "the TPS statute's judicial-review bar applies to all non-constitutional claims" challenging the *Attorney General's* termination of a TPS designation.  *Mullin*, 146 S. Ct. at 2137.

Because the *ultra vires* issue was not raised or addressed in *Mullin*, it is subject to the principle (applied consistently for more than a century) that "[q]uestions which merely lurk in the record … are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952); ECF 117 at 4, 11–14.  Defendants continue to ignore that doctrine and instead point (at 6) to instances where the Supreme Court has assumed an issue without deciding it.  But the whole point of the *Webster v. Fall* line of cases is that sometimes, because parties do not raise an issue, the Supreme Court is not even *aware* of it and therefore *cannot* expressly reserve as to that issue.  *See Webster*, 266 U.S. at 511 (addressing "[q]uestions" that "lurk in the record").  Defendants next argue that the Supreme Court's background assumptions about the Secretary's TPS authority are "considered dicta" which this Court is "bound" to follow.  ECF 118 at 6.  But dicta must actually be "considered" in order to be binding.  Passing background remarks—incidental to the issues actually presented and unaccompanied by substantive analysis—are not "considered."[5]  And even persuasive dicta—including from the Supreme Court—cannot override a lower court's interpretation of a statute's plain text.[6]

---

[5] *See, e.g.*, *United States v. Pimental*, 176 F.4th 151, 157–58 (1st Cir. 2026) (dicta is "considered" when it is "clear and explicit in its import"); *United States v. Patel*, 524 F. Supp. 2d 107, 111–12 (D. Mass. 2007) (distinguishing between "considered dicta," *i.e.*, "carefully considered statement[s]," and dicta that is "incidental," without analysis, and therefore non-authoritative).

[6] *See, e.g., Arthur C. Harvey Co. v. Malley*, 61 F.2d 365, 366 (1st Cir. 1932) (determining that the Supreme Court's "dictum[] should not control" because it is "contrary to the language of the

Defendants still assert that the *ultra vires* claim is "self-defeating," but they ignore Plaintiffs' explanation for why it is not. *See* ECF 114 at 5–6. For example, Defendants say (at 11) it is "not at all apparent why" a future lawsuit would be necessary to challenge South Sudan's TPS designation. The answer is Article III and the APA. *See id.* at 5–6 & n.9. Defendants also claim that *DHS v. Regents of the University of California*, 591 U.S.1 (2020), would not apply to a future rescission based on the view that South Sudan's TPS designation was wholly unlawful. But *Regents* made clear that even "illegal" programs must be "wound down" in a way that considers "reliance interests" and is otherwise consistent with the APA. 591 U.S. at 13, 25, 30. And the Executive Branch very well could identify separate authority for a TPS designation—in whole or in part—rather than rescinding it entirely. *See Mullin*, 146 S. Ct. at 2128 (explaining that, prior to TPS statute's enactment, "the Executive Branch sometimes provided similar relief as a matter of discretion without any express statutory authorization"). The availability of those alternatives places any future TPS rescission squarely within the *Regents* framework.

## II.    Defendants Have Nothing New to Say on the Due Process Claim

Defendants offer little in response to Plaintiffs' most recent due process arguments and authorities, s*ee* ECF 114 at 6–7, so Plaintiffs rely on those here to avoid redundancy. Plaintiffs separately highlight several points:

*First*, Defendants fail to engage with this Court's rulings recognizing materially identical due process violations in the immigration context. *See* ECF 114 at 7.[7]

---

statute"); *In re Bateman*, 515 F.3d 272, 282 (4th Cir. 2008) (adopting the "plain terms of" the statute despite "considerable persuasive value" of Supreme Court dicta).

[7] *See also Mansor v. USCIS*, 2025 WL 4274509, at *8 (W.D. Wash. Dec. 1, 2025), *amended*, 824 F. Supp. 3d 1155 (W.D. Wash. 2026) (government violated TPS applicants' procedural due process rights by failing to issue work authorization in violation of the statutory requirements); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991) (programs relating to "the

*Second*, Defendants ignore the cases where courts have applied procedural due process protections to determinations that affect large groups of people at once. *See* ECF 114 at 7 (highlighting travel ban Executive Order and DACA rescission as examples).

*Third*, Defendants emphasize that the conferral of TPS status is largely discretionary, ECF 118 at 17, but that is irrelevant. What matters for the due process analysis is that the termination of TPS status is subject to statutory standards that cabin any discretion. *See* ECF 114 at 6–7.

*Fourth*, a due process claim does not demand proof that a required procedure would have caused a different outcome. "It is process that the procedural due process right protects, not the outcome." *See, e.g.*, *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013).

*Fifth*, Plaintiffs do not seek "an entitlement to nothing but procedure." ECF 118 at 18. Plaintiffs have identified concrete interests in removal protection and work authorization. *See* ECF 117 at 14–16. Courts have repeatedly recognized that those are property and liberty interests cognizable under the Due Process Clause. *See id.* at 14–15.

## III.    The Remaining Factors Overwhelmingly Favor Plaintiffs

This Court has already found that the termination of South Sudan's TPS designation would inflict irreparable harm because Plaintiffs would lose work authorization, lawful status-related benefits, and protection from removal to a dangerous country. *See* ECF 65 at 38–40. The equities and the public interest (which merge here) also continue to favor Plaintiffs overwhelmingly. *Id.* at 40–41.

### CONCLUSION

The Court should grant Plaintiffs' renewed postponement motion.

---

opportunity to obtain gainful employment [are] plainly sufficient to mandate constitutionally fair procedures").

Dated: August 6, 2026

Respectfully Submitted,

*/s/ Paul Killebrew*
Mark H. Lynch (*pro hac vice*)
Stephen Petkis (*pro hac vice*)
Daniel G. Randolph (*pro hac vice*)
Paul Killebrew (*pro hac vice*)
Ayana M. Lindsey (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000
MLynch@cov.com
SPetkis@cov.com
DRandolph@cov.com
PKillebrew@cov.com
ALindsey@cov.com

*/s/ Nargis Aslami*
Nargis Aslami (BBO No. 714848)
Melissa Keaney (*pro hac vice*)
Collin Poirot (*pro hac vice*)
Abbey Rutherford (*pro hac vice*)
MUSLIM ADVOCATES
1032 15th Street N.W. #362
Washington, D.C. 20005
(202) 897-2622
Nargis@muslimadvocates.org
Melissa@muslimadvocates.org
Collin@muslimadvocates.org
Abbey@muslimadvocates.org

*/s/ Erik Crew*
Erik Crew (*pro hac vice*)
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
(949) 603-7411
ecrew@haitianbridge.org

*Counsel for Plaintiffs African Communities
Together, Mary Doe, David Doe, Peter Doe, Jacob
Doe, and the Proposed Class*

6

**<u>CERTIFICATE OF SERVICE</u>**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Paul Killebrew*
Paul Killebrew

7