**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ )<br>AFRICAN COMMUNITIES TOGETHER; )<br>MARY DOE; DAVID DOE; PETER DOE; )<br>and JACOB DOE, on behalf of )<br>themselves and all others )<br>similarly situated, )<br>            )<br>           Plaintiffs, )<br>            )<br>v. )<br>            )<br>MARKWAYNE MULLIN, in his official )<br>capacity as Secretary of the )<br>Department of Homeland Security; )<br>U.S. DEPARTMENT OF HOMELAND )<br>SECURITY; U.S. CITIZENSHIP AND )<br>IMMIGRATION SERVICES; and UNITED )<br>STATES OF AMERICA, )<br>            )<br>           Defendants. )<br>_____ ) | Civil Action<br>No. 25-cv-13939-PBS |

**MEMORANDUM AND ORDER**

August 7, 2026

Saris, J.

**INTRODUCTION**

This litigation challenges the termination of the temporary protected status ("TPS") designation of South Sudan. See Termination of the Designation of South Sudan for Temporary Protected Status, 90 Fed. Reg. 50484 (Nov. 6, 2025). On February 12, 2026, the Court postponed the termination determination under 5 U.S.C. § 705 on the ground that the Secretary of Homeland Security violated the Administrative Procedure Act ("APA"), 5

1

U.S.C. § 551 et seq. See Afr. Cmtys. Together v. Noem, 820 F. Supp. 3d 48, 72 (D. Mass. 2026). Following the Supreme Court's June 25, 2026, decision in Mullin v. Doe, 146 S. Ct. 2121 (2026), which involved the termination of TPS for Syria and Haiti, the First Circuit summarily reversed the postponement order and remanded for further proceedings, see Afr. Cmtys. Together v. Mullin, No. 26-1254, 2026 WL 2186097, at *1 (1st Cir. July 29, 2026). The Court presumes familiarity with these three decisions.

Now before the Court is Plaintiffs' motion to amend their complaint to add two new claims (Dkt. 94), which were not raised to or addressed by the Supreme Court. Plaintiffs have also renewed their motion for postponement based on the proposed new claims (Dkt. 116). After a hearing on the motion to amend and full briefing, the Court concludes that Plaintiffs' proposed new claims would be futile and unlikely to succeed. Plaintiffs' motions therefore are **DENIED**.

## **LEGAL STANDARD**

### I.  **Motion to Amend**

A party seeking to amend a pleading at this stage of the litigation requires either "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. In the absence of a specific reason to deny a motion to amend, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated

2

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," the court's leave "should, as the rules require, be 'freely given.'" Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 36 (1st Cir. 2022) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

## II.  Motion to Postpone

The APA provides that, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury," a court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of" the court's review of the agency action. 5 U.S.C. § 705. In determining whether to postpone agency action under § 705, courts assess the factors that govern the issuance of a preliminary injunction. See, e.g., Nat'l TPS All. v. Noem, 150 F.4th 1000, 1015 (9th Cir. 2025); Colorado v. U.S. EPA, 989 F.3d 874, 883 (10th Cir. 2021); Cook County v. Wolf, 962 F.3d 208, 221 (7th Cir. 2020).

Accordingly, a party moving under § 705 must establish that (1) it "is likely to succeed on the merits"; (2) it "is likely to suffer irreparable harm in the absence of" postponement of the challenged agency action; (3) "the balance of equities tips in [its] favor"; and (4) postponement of the agency action "is in the public interest." Sosa v. Mass. Dep't of Corr., 80 F.4th 15, 25

3

(1st Cir. 2023) (quoting <u>Dist. 4 Lodge of the Int'l Ass'n of Machinists Loc. Lodge 207 v. Raimondo</u>, 40 F.4th 36, 39 (1st Cir. 2022)). The first factor "is the sine qua non" of the analysis. <u>US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC</u>, 121 F.4th 339, 347 (1st Cir. 2024). The third and fourth factors "merge when the [g]overnment is the opposing party." <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009).

## DISCUSSION

Plaintiffs seek postponement of the termination of South Sudan's TPS designation based on two new proposed claims: (1) a claim that former Secretary of Homeland Security Kristi Noem acted ultra vires in terminating the designation because that authority belongs exclusively to the Attorney General and (2) a procedural due process claim that former Secretary Noem's alleged failure to consult with appropriate agencies and to publish the true basis for the termination determination deprived Plaintiffs of protected liberty and property interests without adequate process. The Court addresses each claim in turn.

## I.    **Ultra Vires Claim**

First, Plaintiffs request to amend their complaint to assert a claim that only the Attorney General, not the Secretary of Homeland Security, has statutory authority to terminate a TPS designation. Defendants argue that the Court is barred by 8 U.S.C. § 1254a(b)(5)(A) from reviewing this claim. The Supreme Court has

4

held that § 1254a(b)(5)(A)'s "judicial-review bar applies to all non-constitutional claims." Mullin, 146 S. Ct. at 2137. Plaintiffs nevertheless contend that an ultra vires claim is not governed by this provision. The Court assumes, without deciding, that it has statutory authority to consider the merits of this proposed claim. See id. (plurality opinion) (explaining that a court may bypass a jurisdictional question when adjudicating a motion for interim relief, such as a motion to postpone under § 705). Even if such authority exists, the claim is futile and unlikely to succeed.

The parties agree that the TPS statute, as enacted in 1990, refers solely to the Attorney General. See 8 U.S.C. § 1254a. But in connection with creating the Department of Homeland Security as part of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, and a subsequent appropriations bill, see Homeland Security Act Amendments of 2003, Pub. L. No. 108-7, 117 Stat. 11, Congress mandated that

> [t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers.

8 U.S.C. § 1103(a)(1). Also in the Homeland Security Act, Congress added a new subsection to the same section of the statute, providing that

5

> [t]he Attorney General shall have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the Executive Office for Immigration Review, on the day before the effective date of the Immigration Reform, Accountability and Security Enhancement Act of 2002.

Id. § 1103(g)(1).

Plaintiffs concede that the TPS statute is a "law[] relating to the immigration and naturalization of aliens" but contend that the authority to terminate a TPS designation was carved out of § 1103(a)(1)'s transfer of authority because that power had been "conferred upon the . . . Attorney General" by § 1254a. 8 U.S.C. § 1103(a)(1). Defendants initially responded that § 1103(a)(1) transferred TPS authority to the Secretary of Homeland Security because § 1103(g)(1) defined the only immigration powers of the Attorney General that were not to be transferred -- i.e., those previously exercised by the Executive Office for Immigration Review ("EOIR") -- and those powers did not include the administration of the TPS program.[1] Plaintiffs take the position that § 1103(g)(1) merely represents one non-exclusive example of the Attorney General's retained authority.

---

[1]  In a subsequently filed brief, Defendants hedged that "§ 1103(a)'s proviso is properly understood to explain that the transfer covered functions except otherwise provided elsewhere" and cited § 1103(g) as one example. Dkt. 118 at 8.

6

This dispute presents a matter of first impression regarding the proper interpretation of 8 U.S.C. § 1103(a)(1) and (g)(1). For over two decades, the executive and judicial branches alike have operated under the unchallenged understanding that the Secretary of Homeland Security has the statutory authority to administer the TPS program. And the Supreme Court has stated that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security." Mullin, 146 S. Ct. at 2129 (citing 6 U.S.C. §§ 552(d), 557);[2] see also Jill H. Wilson, Cong. Rsch. Serv., RS20844, Temporary Protected Status and Deferred Enforced Departure 4 n.24 (2025) ("When TPS was enacted in 1990, most immigration-related functions, including designating countries for TPS, fell under the authority of the Attorney General. With the creation of the Department of Homeland Security in 2002, most of the Attorney General's immigration-related authority transferred

---

[2] The Supreme Court cited 6 U.S.C. §§ 552(d) and 557 when referring to the Secretary of Homeland Security's TPS authority. These sections are housekeeping provisions that ensure that statutory terms be construed as referring to the Department of Homeland Security wherever a substantive transfer of authority has occurred. See 6 U.S.C. § 552(d) ("References relating to an agency that is transferred to the Department [of Homeland Security] . . . shall be deemed to refer, as appropriate, to the Department [of Homeland Security] . . . ." (emphasis added)); id. § 557 ("With respect to any function transferred by or under this chapter . . . , reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department [of Homeland Security] to which such function is so transferred." (emphases added)).

to the Secretary of [Homeland Security] as of March 1, 2003."
(citation omitted)). This issue has not been raised in earlier
briefing in this case, and the parties have not cited any other
TPS case where it has been litigated. Nor have they identified any
relevant legislative history (and the Court has likewise found
none).

Plaintiffs and Defendants propose different constructions of
the relevant statutory provisions. Under Plaintiffs' view, in
which § 1103(a)(1) reserves to the Attorney General all duties
previously conferred upon him, § 1103(g)(1)'s provision that the
Attorney General would retain all functions exercised "by the
Attorney General with respect to the Executive Office for
Immigration Review" would be redundant. 8 U.S.C. § 1103(g)(1). On
the other hand, if Defendants are correct that § 1103(g)(1)
describes the immigration-related authority retained by the
Attorney General, then § 1103(a)(1)'s reference to the Attorney
General is unnecessary. Either construction thus results in
statutory ambiguity. See Mullin v. Al Otro Lado, 146 S. Ct. 2079,
2092-93 (2026) (noting that although "[t]he anti-surplusage canon
is useful," "Congress sometimes 'enacts provisions that are
superfluous'" (quoting Microsoft Corp. v. i4i Ltd. P'ship, 564
U.S. 91, 107 (2011))). The statute is not crystal clear, but that
does not "relieve[] [the Court] of its obligation to independently
interpret" it. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400

8

(2024); see id. (noting that "[c]ourts . . . routinely confront statutory ambiguities").

In the Court's view, the "best reading" of § 1103 is the one initially espoused by Defendants. Id. Section 1103(a)(1) provides that only certain powers "conferred upon the . . . Attorney General" are not transferred to the Secretary of Homeland Security, and § 1103(g)(1) defines what those immigration-related duties are. 8 U.S.C. § 1103(a)(1). Moreover, Defendants' interpretation is consistent with the Department of Homeland Security's "longstanding 'practice'" of administering the TPS program since the Homeland Security Act's passage. Loper Bright, 603 U.S. at 386 (quoting NLRB v. Noel Canning, 573 U.S. 513, 525 (2014)); see id. (noting that such practice is "especially" relevant when conducted "roughly contemporaneously with enactment of the statute" at issue). As the Supreme Court stated in Mullin, if that understanding is wrong, "Congress would have ample means to" correct it. 146 S. Ct. at 2137.

This interpretation of § 1103 is also consistent with its "context[] and structure." Bondi v. VanDerStok, 604 U.S. 458, 484 (2025) (quoting Van Buren v. United States, 593 U.S. 374, 394 (2021)). Prior to 2002, § 1103(a) provided that the "Attorney General" was charged with immigration authority "except insofar as this chapter or [other immigration] laws relate to the powers, functions, and duties conferred upon the President, the Secretary

9

of State, the officers of the Department of State, or diplomatic or consular officers." 8 U.S.C. § 1103(a) (1996). Through the Homeland Security Act and the subsequent appropriations bill, Congress made only two amendments to § 1103: first, it replaced "Attorney General" with "Secretary of Homeland Security" in § 1103(a)(1) (and added "Attorney General" to the list of officials in § 1103(a)(1)'s "except" clause), and second, it added § 1103(g), which specifically defined the Attorney General's reserved powers "under this chapter and all other laws relating to the immigration and naturalization of aliens" (notably, the same language used in § 1103(a)(1)). See Homeland Security Act § 1102(2)(A), (3); Homeland Security Act Amendments § 105(1). This drafting history indicates that Congress likely intended § 1103(g)(1) -- along with other simultaneously or subsequently enacted statutory provisions, but not prior ones -- to define the immigration powers retained by the Attorney General notwithstanding the transfer-of-authority provision contemporaneously enacted in § 1103(a)(1).[3]

---

[3] Plaintiffs posit that this interpretation of § 1103 calls into question whether certain duties currently performed by the Attorney General should in fact be performed by the Secretary of Homeland Security. See 8 U.S.C. § 1533(a)(1) (discussing Attorney General's authority relating to an alien terrorist removal court); id. § 1451(f) (discussing Attorney General's role relating to a certificate of naturalization); id. § 1103(b) (discussing Attorney General's power over certain land acquisitions). Those specific issues are not before the Court.

Finally, the Court further notes that under Plaintiffs' interpretation of § 1103, their ultra vires claim would likely still be futile. That is because if, as Plaintiffs posit, the Attorney General enjoys the exclusive right to <u>terminate</u> a TPS designation, he likewise has the sole authority to <u>designate</u> a country for TPS in the first place. <u>See</u> 8 U.S.C. § 1254a. South Sudan's original TPS designation would thus be invalid by the same token as its termination. It is true, as Plaintiffs note, that only the termination determination is at issue in this litigation. But that does not negate the fact that as a logical matter, Plaintiffs' arguments rest upon a self-contradictory, self-defeating foundation. <u>See, e.g.,</u> <u>O'Connell v. Marrero-Recio</u>, 724 F.3d 117, 129 (1st Cir. 2013) (considering extent to which "arguments are self-defeating").[4]

## II.  **Procedural Due Process Claim**

The Court now turns to Plaintiffs' proposed procedural due process claim. The Supreme Court did not address this claim in <u>Mullin</u>, and it did not resolve the question of whether

---

[4] Plaintiffs further suggest that under <u>Department of Homeland Security v. Regents of the University of California</u>, Defendants could not wind down South Sudan's TPS designation on the basis that the wrong official promulgated the designation without meeting certain procedural requirements and considering reliance interests. <u>See</u> 591 U.S. 1, 24-33 (2020). But <u>Regents</u> concerned arbitrary-and-capricious claims under the APA, which the Supreme Court held unreviewable in <u>Mullin</u>, <u>see</u> <u>Mullin</u>, 146 S. Ct. at 2133-37, and in any event, Plaintiffs' reference to <u>Regents</u> does not negate the logical fallacy posed by their ultra vires claim.

§ 1254a(b)(5)(A) bars judicial review of constitutional claims. See 146 S. Ct. at 2137 (plurality opinion).

Plaintiffs assert that they have constitutionally protected liberty and property interests in South Sudan's TPS designation because it affords them protection against removal and authorization to work. They contend that Defendants violated procedural due process by depriving Plaintiffs of these interests without obeying the procedural requirements of the TPS statute -- i.e., interagency consultation and publication of the true basis for the termination determination in the Federal Register. See Afr. Cmtys. Together, 820 F. Supp. 3d at 56 (describing these requirements).

The First Circuit has explained that the requirements of procedural due process "turn[] on whether the government conduct affecting the protected [liberty or] property interest is legislative or adjudicative in nature." García-Rubiera v. Fortuño, 665 F.3d 261, 272 (1st Cir. 2011). On one end of this "continuum," if a protected interest "is affected by generally-applicable legislative action," the interest-holder is "not entitled to notice above and beyond the notice provided by the enactment and publication of the statute" at issue. Id. "At the other end" of the continuum are "individual adjudications, which require more specific procedures, as well as more specific notice." Id. (citation omitted) (citing Mathews v. Eldridge, 424 U.S. 319, 335

12

(1976)); see also Hill v. U.S. Dep't of the Interior, 151 F.4th 420, 434 & n.6 (D.C. Cir. 2025) (distinguishing between deprivations that are "'the direct consequence' of a statute" and ones resulting from "individualized determination[s] or adjudication[s]" (quoting Atkins v. Parker, 472 U.S. 115, 130 (1985))).

At least one case has held that the protections against removal and work authorizations stemming from a TPS designation are constitutionally protected liberty and property interests. See Mansor v. U.S. Citizenship & Immigr. Servs., 685 F. Supp. 3d 1000, 1013 (W.D. Wash. 2023) (holding that individuals eligible for TPS from a country designated for TPS "ha[ve] a property interest in temporary employment authorization subject to due process protections"). Here, however, Plaintiffs do not assert a denial of individual benefits under South Sudan's TPS designation; rather, they bring a programmatic challenge against the termination of the designation altogether. For that reason, this litigation is a far cry from a dispute over "individual adjudications" subject to the Mathews v. Eldridge framework. García-Rubiera, 665 F.3d at 272. Instead, Plaintiffs' proposed procedural due process claim is closer to a challenge to a "generally-applicable" agency action. Id. Plaintiffs thus have no invocable individual liberty or property interests in the TPS designation itself.

Plaintiffs contend that former Secretary Noem violated their due process rights by failing to consult with appropriate agencies and to publish the true basis for her termination determination in the Federal Register, as required by the TPS statute. In other words, Plaintiffs repackage their previously asserted APA claims -- which they concede are not reviewable by this Court in light of Mullin, see 146 S. Ct. at 2133-37 -- as constitutional ones under the label of procedural due process. But the Supreme Court rejected materially identical challenges under the APA, and Plaintiffs have no liberty or property interests left other than those provided by statute or regulation based on their individual circumstances through other statutory provisions.[5]

---

[5] Plaintiffs cite Washington v. Trump, 847 F.3d 1151 (9th Cir. 2017) (per curiam), and Batalla Vidal v. Nielsen, 291 F. Supp. 3d 260 (E.D.N.Y. 2018), rev'd on other grounds by, Regents, 591 U.S. 1, in support of the proposition that "[c]ourts have applied procedural due process protections to determinations that affect large groups of people at once." Dkt. 114 at 8. But these two cases each involved government action that directly impacted individuals' due process rights. Washington concerned an executive order that failed to provide "notice and a hearing prior to restricting an individual's ability to travel." 847 F.3d at 1164. And the relevant portion of Batalla Vidal related to the denials of individual renewal requests under the Deferred Action for Childhood Arrivals program. See 291 F. Supp. 3d at 281. Neither case supports Plaintiffs' contention that a procedural due process claim may be premised on alleged procedural errors in the government's termination of an entire program pursuant to a validly enacted statute.

**<u>ORDER</u>**

For the foregoing reasons, Plaintiffs' newly proposed claims would be futile, <u>see</u> <u>Amyndas Pharms.</u>, 48 F.4th at 36, and unlikely to succeed on the merits, <u>see</u> <u>Sosa</u>, 80 F.4th at 25. Plaintiffs' motion to amend their complaint (Dkt. 94) and renewed motion for postponement (Dkt. 116) therefore are **<u>DENIED</u>**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge